# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

vs.                                                    **CASE NO: 8:19-CR-324-CEH-SPF**

**ALEXIS HERNANDEZ VASQUEZ**

_____/

## SENTENCING MEMORANDUM

The Defendant, Alexis Hernandez Vasquez (hereinafter "Mr. Hernandez Vasquez"), by and through his undersigned counsel, respectfully submits this sentencing memorandum for this Honorable Court's consideration. Mr. Hernandez Vasquez requests that this Court consider and determine that a variance from the applicable guideline range is appropriate under 18 U.S.C. § 3553, and thus impose a sentence of a total of 60 months of incarceration.

## STATEMENT OF FACTS

*Procedural History*

1. Mr. Hernandez Vasquez pled guilty to count one of his indictment for Conspiracy to Possess with the Intent to Distribute Five Kilograms or More of Cocaine, While on Board a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a) and (b), and 21 USC § 960(b)(1)(B)(ii).

2. This case is presently set for sentencing on January 8, 2020.

*Advisory Guideline Calculation*

3. The Presentence Report (PSR) calculates Mr. Hernandez Vasquez's total offense level as a level 29 with a criminal history category of I. PSR at ¶¶ 35; 41. Accordingly, Mr. Hernandez Vasquez faces an advisory guideline sentencing range

of 87 to 108 months of incarceration.

## MEMORANDUM OF LAW

This memorandum examines the issue of whether a sentencing range of 87-108 months is in fact sufficient but not greater than necessary to comply with sentencing directives laid out in 18 U.S.C. § 3553(a)(2), or if a 60 month sentence, 27 months below the low end of the recommended guideline would be just as effective and sufficient. An examination of section 3553 is critical in the instant case since many of its sentencing factors supports Mr. Hernandez Vasquez's request for a variance. *See* 18 U.S.C. § 3553(a).

I.  **_Booker and its Progeny Provides the Court with the Discretion to Impose a Variance under 18 U.S.C. § 3553(a)_**

Pursuant to *United States v. Booker,* 543 U.S. 220, 245-67 (2005), a court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States,* 518 U.S. 81 (1996)).[1]

To guide a court's discretion, section 3553(a)(2), requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case

---

[1] As the Supreme Court recently reaffirmed, [s]entencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence. This durable tradition remains, even as federal laws have required sentencing courts to evaluate certain factors when exercising their discretion." *Dean v. United States*, 127 S. Ct. 1170, 1175 (2017) (internal citation omitted). Moreover, judicial discretion to consider all information about the case and the offender is a time-honored principle of American law and has historically been understood as a means of ensuring justice in individual cases. *See Koon v. United States*, 518 U.S. 81,113 (1996) *accord Pepper v. United States*, 562 U.S. 476, 487-88 (2011). Congress has expressly affirmed a judge's discretion to consider the fullest information possible. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

through the lens of several factors. Against this backdrop of factors, Mr. Hernandez Vasquez respectfully submits that a variance is warranted in his case. As the following sections demonstrate, an advisory guideline sentence would violate the requirement that a defendant's sentence be sufficient but not greater than necessary to satisfy the purposes of § 3553(a). *See Pepper v. United States*, 562 U.S. 476 (2011) (a "sentencing judge's overarching duty under § 3553(a) [is to] to impose a sentence sufficient, but not greater than necessary"). As this memorandum establishes, applying the § 3553(a) factors to Mr. Hernandez Vasquez's case supports the imposition of a 60-month sentence.

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

The significance of the first factor lies in its comprehension that a court cannot merely focus on a defendant's crime in determining his sentence. Rather, a court must consider the offense against the backdrop of a defendant's life. The Supreme Court has emphasized "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (citation omitted). Consistent with this perspective, one federal jurist has concluded:

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics' of the defendant.

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-514 (S.D.N.Y. 2006) (Rakoff, J.).

*The History and Characteristics of the Defendant*

The tenet in *Adelson* that a defendant's criminal conduct must be measured against his overall life has resonance in the instant case. The Adelson Court contemplated a balance of an individual's misgivings versus their good will. While Mr. Hernandez Vasquez was paroled into the United States for committing a drug trafficking crime, this conduct, on paper, is a break from an otherwise law-abiding life. In any case where the defendant is from a foreign country, where ready access to criminal records may not accessible, there may always be a question as to whether the individual has led a lawful life. It is at least implicit through Mr. Hernandez Vasquez's work history and his family's station in life, that he has been a law-abiding individual prior to the instant conduct.

Mr. Hernandez Vasquez is a 57-year-old Venezuelan man, who by all accounts had a good upbringing in a healthy environment. As soon as Mr. Hernandez Vasquez was able, he went to work in a legitimate profession. Initially Mr. Hernandez Vasquez worked as a truck driver, delivering random lawful goods in his home country. He continued this work from 1979 until 1985. With some overlap, he also worked for a marine shipping company, eventually working as a merchant marine from 1995 until 2001 until he was laid off. Most recently, Mr. Hernandez Vasquez worked for Grupo Manzanillo, a Venezuelan construction and lumber country until he lost his job due to layoffs in 2017. He held this job from 2009 through 2017 and since his layoff, he and his family have struggled mightily to make ends meet.

Mr. Hernandez Vasquez has two adult children, both of whom support him despite his arrest. Due to a poor Venezuelan economy, Mr. Hernandez Vasquez supports

his wife, 80-year-old mother, and youngest daughter. Mr. Hernandez Vasquez's wife, Emilca Leandro (hereinafter "Ms. Leandro"), suffers from a form of epilepsy secondary to a poor reaction to anesthesia after giving birth to she and Mr. Hernandez Vasquez's youngest daughter. Ms. Leandro's epilepsy causes her to suffer from spontaneous seizures and memory loss. While there is no cure for her condition, medication does reduce the frequency of the seizures.

Mr. Hernandez Vasquez's rationale for undertaking such a fool's errand is not borne of greed. Rather, the reality for Mr. Hernandez Vasquez, was a weekly choice to either provide preventative medicine for Ms. Leandro, or have enough food to adequately feed those who relied upon him. When approached to undertake his journey, Mr. Hernandez Vasquez's decision was based upon a desire to provide for his family when lawful methods did not seem to be viable. He was offered $3000 to complete this trip, payable upon his return, twelve times what he earned at his last legitimate job.

*Nature and Circumstances of the Offense*

Mr. Hernandez Vasquez, along with five others, were caught in International Waters of the Caribbean Sea by the United States Coast Guard Cutter *Resolute*, dragging bales cocaine from the stern of the vessel. The Coast Guard detained the vessel and recovered approximately 144 kilograms of cocaine. Mr. Hernandez Vasquez was not the captain, navigator, or load guard of the vessel, and maintained a role as a common mariner with some driving and mechanical responsibility.

Despite Mr. Hernandez Vasquez's failures in the instant case, he has never been an individual motivated by greed or avarice. Rather, his criminal and reported work history reflects a man who believes in an honest day's work for an honest day's pay.

Clearly, his conduct in this case is a break from this notion, however it took him two years of watching his wife suffer from seizure after seizure and making the morbid decision of whether to eat or treat her ailment to succumb to this illegality. Circumstances are never an excuse to commit a crime, nor does Mr. Hernandez Vasquez assert the underlying current of his decision as such. However, the reason for the decision should be considered and respectfully, in this case it does mitigate Mr. Hernandez Vasquez's blameworthiness. Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?*, 89 Minn. L. Rev. 571, 590 (Feb. 2005)(stating that while a defendant's blameworthiness should be considered according to the nature and seriousness of the crime, it can also be assessed according to "the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or diminished capacity"); *see also United States v. Genao*, 831 F.Supp. 246, 254 (S.D.N.Y.1993)("Can we really say we have a rational system of justice when the court, in imposing sentence, is stripped of the power to even consider the socio-economic and educational background of the defendant"). *Griffin v. Illinois*, 351 U.S. 12, 23 (1956) (Frankfurter, J., concurring) ("The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread.") (citing Anatole France as quoted in Cournos, A Modern Plutarch (1928), p. 27).

      Despite the foregoing mitigation, Mr. Hernandez Vasquez is remorseful for his conduct. He acknowledges and accepts responsibility for making a poor decision in a time of great weakness. A decision breaking from a good history. Returning to contention that the first § 3553 factor requires a sentencing court to view a defendant's

crime through the lens of her entire life, Mr. Hernandez Vasquez's case establishes the wisdom of such a perspective.  For the essential question present, is whether Mr. Hernandez Vasquez's crime reflects his true nature, or whether it is a result of a tragic circumstance that thrust him into making a decision he would never forgive himself for, regardless of the endeavor's success.  When the totality of Mr. Hernandez Vasquez's life is considered, it seems that his criminal behavior is precipitated from two of life's necessities; food and medical care.  Thus, if *Adelson's* admonition that courts should consider a defendant's overall existence in imposing his sentence has any meaning, the undersigned respectfully submits a variance is warranted in Mr. Hernandez Vasquez's case.

2. **THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW AND PROVIDE JUST PUNISHMENT**

Mr. Hernandez Vasquez is charged with a drug offense that guidelines him out at a total offense level 29, calling for an incarceration sentence between 87 and 108 months.  Mr. Hernandez Vasquez, in spite of never having any experience with illegal narcotics prior to his arrest, is not blind to the harm they cause both on an individual end user, but also those innocent bystanders victimized by those ruthless souls who *are* driven by greed and who show no concern for mankind.  This is understood by him, having sat in jail for a little over four months.  While at the time of his undertaking his role in this conspiracy he was cognizant of the horrors of the drug trade, he struggled to think clearly as he watched his wife's health decline and his family yearn for a full belly.

The overriding struggle in any criminal court is striking the balance in sentencing in order to impact a person and hopefully deter that person from ever making such a criminal decision again.  To that end, there is also the question of whether the person can actually be impacted.  Some will not change no matter the sentence.  Others will never recidivate regardless of sentence.  Many are at risk of committing further offenses but can be deterred with the correct sentencing measures imposed.

Mr. Hernandez Vasquez likely will never see his mother again.  His wife's health will not improve without the means to obtain medication, thus putting her life at risk.  This is his true punishment.  This is the result of his decision to act.  For these reasons, amongst others to be articulated at sentencing, it is counsel's submission that Mr. Hernandez Vasquez will not recidivate, regardless of sentence imposed.  Certainly, this Honorable Court must impose a reasonable sentence, however the man being sentenced has a 57-year history of hard work, respect for the law, and diligence in caring for his family.  He is not a career criminal, nor is he one who has ever made his livelihood from criminal activity.  Respectfully, Mr. Hernandez Vasquez's conduct throughout his life exhibit that he does respect the law, and as such, a harsh punishment is not necessary in his case.

It would be reasonable for this Court to consider the economic climate to which Mr. Hernandez Vasquez will one day return, as an older man.  It would be reasonable for this Court to consider that anyone in those circumstances might again succumb to the idea of making more money in a week than they could in months doing anything else.  The back and forth on this issue versus the goodness of a person and their ability to resist such a decision could rock on forever.  The reality is that for those living in these

conditions, anytime they want they could likely gain access to a drug boat crew and take a chance. Mr. Hernandez Vasquez has lived in Venezuela his entire life and has done his best to lawfully provide for his family. He was involuntarily unemployed consistently (but for odd jobs) for two years before succumbing to the need to provide for those he loved most. He is not a weak-minded man, nor is he a criminal. He is not the sum of this, his worst deed. He was a man desperate to comfort the love of his life. A man desperate to put food in front of his elderly mother and youngest child. He was a man trying to do what society has instructed men to do for centuries, regardless of country. He was trying to provide.

Mr. Vasquez Hernandez is before this Court because of his own poor choice. However, this choice was born of necessity rather than evil. Because of this, Mr. Hernandez Vasquez respectfully submits that a sentence below the recommended guideline is appropriate.

3. **THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT**

The principle of general deterrence is based on the unsupported premise that lengthy prison sentences deter crime. This faulty conception has resulted in the mass incarceration of individuals in the United States.

> For the past 40 years, the United States has been engaged in a vast, costly social experiment. It has incarcerated a higher percentage of its people, and for a longer period, than any other democracy. In fact, with 5 percent of the world's population, the U.S. is home to 25 percent of its prisoners. There are five times as many people incarcerated today than there were in 1970. . . [The] archipelago of prisons and jails costs more than $80 billion annually — about equivalent to the budget of the federal Department of Education.

Dr. Oliver Roeder et al., *What Caused the Crime Decline*?, Brennan Center for Just., 22-23 (Feb. 12, 2015), *available at* https://www.brennancenter. org/publication/what-caused-crime-decline.

The condition of mass incarceration is especially troubling since there is no correlation between punishment and reductions in crime. *See id; see also* Gary Kleck and J.C. Barnes, *Deterrence and Macro-Level Perceptions of Punishment Risks: Is There a "Collective Wisdom?"*, 59 Crime & Delinquency 1006, 1031-33 (2013). Kleck and Barnes' study concludes:

> there is generally no significant association between perceptions of punishment levels and the actual levels of punishment that the criminal justice system achieves. This in turn implies that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms, because the fundamental link between actual punishment levels and perceptions of punishment levels appears to be weak to nonexistent.

*Id*. at 1031. The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence. *See* U.S. Dept. of Justice, Nat'l Inst. of Justice, *Five Things About Deterrence* (July 2014). In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter punishment. *See id*.; *see also* Hannah Arendt, *Eichmann in Jerusalem*, Epilogue (1963) ("No punishment has ever possessed enough power of deterrence to prevent the commission of crimes").

4. **TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT**

Having established that prison sentences, regardless of length, have no impact on general deterrence, this section demonstrates that the § 3553(a) factor of specific

deterrence also supports Mr. Hernandez Vasquez's request for a variance. This section focuses on studies establishing that incarceration has no effect on recidivism.

*The relationship between incarceration and recidivism*

As in the case of general deterrence, the empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. *See* National Institute of Corrections*, Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe* (2016). As the following discussion establishes, the best available evidence establishes that imprisonment does not reduce recidivism more than noncustodial sanctions. Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

A 2016 study conducted by the National Institute of Corrections (NIC) establishes three critical tenets regarding incarceration and specific deterrence. First, incarceration has a negligible impact on crime prevention. *See also* Vera Instit. of Justice, *Overview of The Prison Paradox: More Incarceration Will Not Make Us Safer* (July 2017)(concluding that research shows a "weak relationship between incarceration and crime reduction, and highlights proven strategies for improving public safety that are more effective and less expensive than incarceration").[2] Instead, a longer prison sentence may actually lead to a greater risk of recidivism. *See id*. There is strong evidence that prison - by disrupting education and employment, reducing prospects for future employment, weakening family ties and exposing less serious offenders to older more

---

[2] The United States Sentencing Commission has determined that "[t]here is no correlation between recidivism and guidelines' offense level. . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." *See* U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (May 2004).

serious offenders- leads to increased recidivism.  *See Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Public Policy 589 (2007).

Moreover, harsh penalties do not improve the long-term outcomes of the offender.  Longstanding research has found that imprisonment brings about negative individual-level changes that can harm re-integration upon release.  National Research Council. *The Growth of Incarceration in the United States: Exploring Causes and Consequences,* (Nat'l Acad. Press 2014), available at. https://doi.org/10.17226/1861; *see also* Friedrich Nietzsche, *The Genealogy of Morals*, essay 2, aph. 14 (1887). ("All in all, punishment hardens and renders people more insensible; it concentrates; it increases the feeling of estrangement; it strengthens the power of resistance")*.*

Finally, the 2016 study concludes that community correction programs are more effective than incarceration in reducing recidivism.  *See* R. S. Frase et al, *Criminal History Enhancements Sourcebook* (2015) (discussing studies establishing the crime that "custody is associated with higher rates of re-offending than community sentences."). Thus, the most effective to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since  "incarceration does little to change a person's behavior" and persons sentenced to prison have  higher recidivism rates than those sentenced to community corrections.

While Mr. Hernandez Vasquez will be deported back to Venezuela upon his release, these studies in sociology and criminology span continental borders.  Human nature is human nature, regardless of native country.  The numbers do not show a benefit to longer incarceration and given Mr. Hernandez Vasquez's situation, a short sentence

would allow him to return home and again try to provide for his family in a legitimate fashion. In absence of a deterrent effect, Mr. Hernandez Vasquez submits that a sentence of 60 months is sufficient, but not greater than necessary to comply with the provisions of § 3553.

5. **TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER**

Given that Mr. Hernandez Vasquez is from a country whose economy is poor, learning a skill could be critical in his ability to earn a better living for he and his family upon his release from prison. He has expressed an interest in learning English while incarcerated to expand his ability to communicate with others and possibly increase his value to employers. He has also expressed a desire to educate himself in the electrical field and plumbing.

*The Kinds of Sentences Available*

Because Mr. Hernandez Vasquez is charged with a Class A felony, he is not eligible for probation per statute.

*The Kinds of Sentences and Guidelines Range Established*

As noted earlier, Mr. Hernandez Vasquez's guidelines call for a sentence between 87-108 months' imprisonment. In spite of Mr. Hernandez Vasquez now having the ability to enjoy a sentence of less than the statutory minimum mandatory of 120 months due to the passage of the First Step Act and its effect on Safety Valve, Mr. Hernandez Vasquez still submits that even an 87 month sentence is overly harsh given his circumstances. Moreover, the pre-sentence report's calculated sentence of 87 to 108

months of imprisonment is predicated on drug guidelines that a majority of federal judges believe are too harsh. Indeed, "73.7 percent of district court judges and 82.7 percent of circuit court judges [rate] drug punishments as greater than appropriate to reflect the seriousness of drug trafficking offenses." (*See* USSC, *Fifteen Years of Guideline Sentencing, An Assessment of How Well the Criminal Justice System is Achieving the Goals of Sentencing Reform*, at 52.

Respectfully, based upon the foregoing, Mr. Hernandez Vasquez submits that the requested sentence of 60 months' imprisonment is sufficient but not greater than necessary to satisfy the objectives of § 3553.

***The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct***

Because of the recurring and essential problems with the sentencing guidelines, drug sentences necessarily reflect widespread judicial disagreement with the guidelines. For example, in fiscal year 2014, sentences below the guideline range were imposed in over 60% of all drug cases, including departures that were government sponsored. (*See* U.S. Sent'g Comm'n, *2014 Sourcebook of Federal Sentencing Statistics*, tbl. 27).

Considering the types of sentences that have been imposed on drug cases, Mr. Hernandez Vasquez submits that a 60-month prison sentence is not antagonistic to the concept of disparity.

## **CONCLUSION**

As the foregoing establishes, the unique and unthinkable circumstances presented in Mr. Hernandez Vasquez's case warrant a variance below the applicable guideline range. Because the decision in *Booker* has made the Guidelines advisory and

the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, Mr. Hernandez Vasquez respectfully submits that a variance is appropriate pursuant to this significant and paramount sentencing statute.

Respectfully submitted this 31st day of December, 2019.

/S/ Jason M. Mayberry
Mayberry Law Firm, LLC
Jason M. Mayberry
FL Bar# 36212
Attorney for Defendant
3902 Henderson Blvd.
#208-136
Tampa, FL 33629
Ph- 813.444.7435
Fx- 727.755.0098
jason@mayberryfirm.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished by Electronic Filing Service to the Office of the United States Attorney, this 31st day of December, 2019.

/S/ Jason M. Mayberry
Jason M. Mayberry